## BRUCE B. HAY AND OTHERS v. TOWNSHIP OF GROW AND OTHERS.

206 N. W. 2d 19.

March 26, 1973—No. 43492.

*Babcock, Locher, Neilson & Mannella, Richard Beens,* and *John M. Burke,* for appellants.

*Smith, Juster, Feikema, Haskvitz & Casserly, Wyman Smith,* and *Ronald L. Haskvitz,* for respondents.

Heard before Knutson, C. J., and Otis, Peterson, and Kelly, JJ.

PETERSON, JUSTICE.

Defendants, Township of Grow and the members of its Town Board (hereafter, collectively, "township"), appeal from an order denying their motion for a new trial and from a judgment directing the township to issue to plaintiffs a special-use permit to construct a mobile home park on property owned by plaintiffs and situated within the township. The trial court concluded that the township had acted in an arbitrary and discriminatory manner.

Plaintiffs filed their application for a special-use permit on April 17, 1970. The township zoning plan then in existence had been adopted in 1950 and, by amendment in 1967, provided for mobile home parks in all districts by special-use permit. Approximately a week after plaintiffs' application was filed, another application for a special-use permit to construct and operate a mobile home park within the township was filed by Carlyle Company (hereafter "Carlyle"). Plaintiffs' and Carlyle's properties are located in the same locale within the township. Eventually, the Carlyle application was granted, but plaintiffs' was denied.

Public hearings were held on plaintiffs' application in May 1970 and on Carlyle's application in June 1970. There were no

recorded minutes of either of these meetings. On August 11, 1970, pursuant to the recommendation of the Township Planning and Zoning Commission (hereafter "commission"), the town board gave preliminary approval to the Carlyle application subject to Carlyle's acquiescence to certain conditions, the most important of which was that Carlyle build a planned unit development of mobile homes and apartment units. On October 13, 1970, the town board granted a special-use permit to Carlyle for a planned unit development consisting of an established number of mobile home units and multiple dwelling units.

On October 21, prior to any further action on plaintiffs' application, the town board adopted a comprehensive zoning plan (Ordinance No. 8), which became effective January 1, 1971. Ordinance No. 8 repealed the 1950 zoning ordinance and amendments. Under this new ordinance the Carlyle property was zoned R-5 and M-2, classifications allowing for the construction of a mobile home park; but plaintiffs' land was zoned R-1, single-family rural, a classification which does not allow for mobile homes.

On December 29, 1970, two days before the effective date of the new comprehensive plan, the commission recommended that plaintiffs' application be denied. At this meeting, plaintiff Bruce B. Hay stated his willingness to meet all of the conditions imposed on the granting of the Carlyle special-use permit, specifically, in addition to all of the requirements expressly contained in the various local ordinances, plaintiffs would construct mobile home units and multiple dwelling units in the same ratio as had been required of Carlyle and within the same time limits as had been required of Carlyle. At the December 29, 1970, meeting, the commission stated its reason for recommending the Hay application be denied was—

"* * * [b]ased on original recommendation to Town Board re Carlyle proposal with apartment buildings to which Hay reportedly said no. We have approved establishment of one mobile home park and are not certain if Township can handle resultant

rapid increase of population if two mobile home parks are allowed at this time."

No record had been made of Hay's "reportedly" initial rejection of the multiple-dwelling-unit requirement nor was this reason later considered by the town board when it denied plaintiffs' application.

On January 11, 1971, the town board, acting upon the commission's recommendation, denied plaintiffs' request for a special-use permit. The minutes of this meeting do not reveal any of the reasons upon which the town board based its denial, although several topics such as demands on municipal services, schools, and roads were discussed and Hay was questioned as to the time within which financing could be obtained. At trial in the district court, the parties stipulated that the acting secretary for the town board at the January 11 meeting would testify that the board took the following matters into consideration in denying plaintiffs' application:

"* * * population, density of population, impact of the application on municipal services, the pressure of this land on [Round Lake]."

No further explanation was offered by the township as to the basis upon which plaintiffs' application was denied.

The issue before the trial court was whether, under its 1950 zoning ordinance, as amended in 1967, the township validly could deny plaintiffs' application for a special-use permit. The court had no occasion to rule on the effect, if any, of the enactment of the January 1, 1971, comprehensive zoning plan, effective subsequent to the denial of plaintiffs' application.[1] The judgment and order from which defendants appeal are based upon the conclusion that in the circumstances of this case denial of the special-use permit was both arbitrary and discriminatory.

---

[1] As indicated in footnote 3, *infra*, however, the result probably would not have been different had the court had occasion to consider that subsequent zoning ordinance.

1. Grow Township's zoning plan of 1950, as amended in 1967 by § 2-44(a), provided for the submission of applications for special-use permits to the Planning and Zoning Commission and established the following standard to be used by the commission in determining whether to recommend approval of the request:

"* * * [The commission] shall not recommend the granting of a permit unless it finds that the establishment, maintenance, or conducting of the use for which a Special Use Permit is sought will not under the circumstances of the particular case be detrimental to the public welfare or injurious to property or improvements in the neighborhood. [The commission] may designate conditions and require guarantees in the granting of Special Use Permits."

The ordinance obviously contains no specific standards. The trial court found that plaintiffs were willing to comply with conditions designated by the commission, and it further found that plaintiffs' proposed use would not create any greater demands upon the township than would some other development.

It is now settled that where a zoning ordinance specifies standards to apply in determining whether to grant a special-use permit and the applicant fully complies with the specified standards, a denial of the permit is arbitrary as a matter of law. Zylka v. City of Crystal, 283 Minn. 192, 167 N. W. 2d 45 (1969); Inland Const. Co. v. City of Bloomington, 292 Minn. 374, 195 N. W. 2d 558 (1972). And the denial is no less improper in that situation even though the town board, rather than the commission, was the final authority for issuance of permits. Enright v. City of Bloomington, 295 Minn. 186, 203 N. W. 2d 396 (1973). What we said in Zylka is of particular pertinence to this ordinance:

"* * * Where the ordinance does not specify standards, as is usually the case when final authority to determine whether a permit shall be granted is retained by the council, an arbitrary denial may be found by a reviewing court when the evidence presented at the hearing before the municipal governing body and

the reviewing court establishes that the requested use is compatible with the basic use authorized within the particular zone and does not endanger the public health or safety or the general welfare of the area affected or the community as a whole." 283 Minn. 196, 167 N. W. 2d 49.

The standards contained in the township's ordinance, except for the addition of an express provision authorizing the commission to designate conditions and require guarantees, are but the standards mentioned in Zylka. The absence of more express standards makes denial of a special-use permit more, not less, vulnerable to a finding of arbitrariness.

The township could have, with justification, denied plaintiffs' application upon a determination that the proposed use would endanger the public health, safety, or general welfare of the area affected if the factual basis and reasons for that determination at the time the action was taken were expressed in findings reflected in the town board's minutes or otherwise were established in the judicial proceedings challenging that determination. Similarly, it could permissibly have denied plaintiffs' application had they failed to accept conditions imposed by the town board and having a reasonable relationship to that standard. This, however, is not the situation here presented.

The minutes of the town board meeting at which plaintiffs' application was denied disclose only a general discussion of various factors which apparently motivated the town board's decision. The extremely brief treatment accorded these factors was not remedied during the subsequent judicial proceedings. The town board did not state, nor was it demonstrated in the trial court, that the proposed use would endanger the public health or safety or the general welfare of the community. At most, the mention of these general factors by the town board supports the proposition that the sole basis for the denial of the application was, as the commission had previously stated, that the Carlyle application had already been granted and "[w]e * * * are not certain if [the] Township can handle resultant rapid increase

of population if two mobile home parks are allowed at this time." The absence of a factual basis for this inarticulate conclusion renders it no reason at all.

2. The township's denial of plaintiffs' application for a special-use permit was not only arbitrary but also impermissibly discriminatory, contravening the equal protection clause of the Fourteenth Amendment of the United States Constitution and art. 1, § 2, and art. 4, §§ 33 and 34, of the Minnesota Constitution.[2]

A review of the January 11, 1971, minutes makes it fully apparent that the members of the town board were primarily concerned with the idea that they should not grant a special-use permit to operate a mobile home park where a previous application had been granted. But this result was reached only because the town board had acted first on the application that had in point of time been filed second.[3] The almost simultaneous filing of two

---

[2] The standards of the equal protection clause of the Fourteenth Amendment are identical to those tenets of equality declared in the cited provisions of our Minnesota Constitution. Minneapolis Federation of Teachers v. Obermeyer, 275 Minn. 347, 147 N. W. 2d 358 (1966).

[3] We noted at the outset that the issue in the trial court involved only the zoning ordinance of 1950, as amended, and not the 1971 comprehensive zoning plan (Ordinance No. 8). It is doubtful, as we forecast in footnote 1, that the township properly could have denied plaintiffs' application for a special-use permit even under the comprehensive zoning plan. An application for a permit made before a zoning ordinance becomes effective ordinarily does not in itself give rise to a right to a use excluded by the ordinance, 8 McQuillin, Municipal Corporations (3 ed.) § 25.155, and courts ordinarily are reluctant to find a "vested right" on the part of an applicant for a special-use permit. However, as we stated in State ex rel. Berndt v. Iten, 259 Minn. 77, 106 N. W. 2d 366 (1960), there are certain circumstances in which a vested right may be deemed acquired as a result of an existing zoning ordinance. Alexander v. City of Minneapolis, 267 Minn. 155, 125 N. W. 2d 583 (1963), held in an analogous situation that where an applicant is entitled to a permit, having complied with all the provisions of any pertinent code or ordinance then in effect, he cannot be denied such permit on the basis of a "hold order" which directs the governmental official not to

applications, plaintiffs' and Carlyle's,[4] clearly mandated that both applicants be accorded equal treatment and that one applicant not be preferred over another for reasons unexpressed or unrelated to the health, welfare, or safety of the community or any other particular and permissible standards or conditions imposed by the relevant zoning ordinances. No legitimate interest of the municipality was furthered by the differential treatment accorded plaintiffs' application.

Affirmed.

issue permits. Here, plaintiffs' application was filed 6 months prior to the enactment of Ordinance No. 8 and 8 months prior to its effective date. This amount of time would seem more than sufficient to reach a decision with respect to plaintiffs' application, a view reinforced by the fact that the town board was able to process and approve the Carlyle application, which had been filed a week after plaintiffs', within a period of 5 1/2 months.

[4] Carlyle had filed an application for a mobile home park prior to the 1967 amendment providing for mobile home parks by special-use permit. The application was denied. The priority in time of the unauthorized application is without significance in considering discrimination between two authorized applications.