CARL BOLANDER & SONS, INC., Appellant,

v.

CITY OF MINNEAPOLIS, Respondent.

No. CX–85–915.

Court of Appeals of Minnesota.

Dec. 10, 1985.
Review Denied Feb. 14, 1986.

Mark R. Miller, Hessian, McKasy & Soderberg, Minneapolis, for appellant.

Robert J. Alfton, City Atty., William C. Dunning, Asst. City Atty., Minneapolis, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Carl Bolander and Sons, Inc. (Bolander) appeals from the trial court's judgment granting the City of Minneapolis' (City) cross-motion for summary judgment, denying Bolander's motion for summary judgment, and dismissing Bolander's complaint with prejudice. We affirm.

## FACTS

On September 8, 1978, Bolander filed an application for a building permit with the Riverfront Development Coordination Board (RDCB) of Minneapolis to construct an addition to its office building on "Boom Island," a tract of land owned by Bolander adjacent to the Mississippi River in Minneapolis. The building permit application was in compliance with the building code, zoning ordinances, and regulations applicable to Boom Island, including the Minneapolis Heritage Preservation Commission's (HPC) criteria and guidelines for property located within designated historic districts.

A staff person for HPC expressed the opinion that the application be approved because it complied with HPC criteria and guidelines.

After a public hearing the HPC determined that the proposed construction would impair valuable historic attributes of the district and denied Bolander's application.

On September 25, 1978, the executive secretary of the RDCB, the board created to coordinate the development of the Mississippi River area in Minneapolis, told the Community Development Committee of the City Council that the RDCB had approved a master plan that included the acquisition of Boom Island for purposes of riverfront park development as soon as the appropriate funding was secured. The committee recommended a building permit moratorium, and on September 29, 1978, the City Council enacted a maximum sixty-day moratorium on building permits for Boom Island and adjacent areas that were included in the proposed riverfront park. The reso-

lution noted that it was an objective of the RDCB to develop the area in which Boom Island was located for a regional park and that the Metropolitan Council had programmed $15.5 million for property acquisition.

The Community Development Committee of the City Council upheld the HPC permit denial and reported the matter to the full city council without recommendation. The council denied Bolander's application on November 9, 1978 pending the allocation of funds necessary to acquire the park property but encouraged Bolander to resubmit his application after May 1, 1979.

Bolander reapplied for a building permit on December 3, 1979 but the Community Development Committee postponed the matter pending a clarification of intent of the Minneapolis Park and Recreation Board to purchase the property, the Board having given assurances that progress was being made toward acquiring the property.

Bolander commenced suit on December 29, 1979, alleging that the City unconstitutionally denied Bolander its full and lawful possession, enjoyment, and value of its property without just compensation and acted arbitrarily and capriciously in violation of his due process rights. Bolander sought seven million dollars for the loss of value of the property and fifteen hundred dollars per day from September 25, 1978 for the loss of sales and profits and for the cost of increased expenses resulting from not having the office addition on Boom Island.

The Minneapolis Park and Recreation Board formally authorized condemnation of the land on July 2, 1980 and the final report of the commissioners was filed on October 27, 1981, whereby Bolander received $2,977,594.00 plus relocation expenses and interest for its Boom Island property.

The trial court held there was no taking without compensation because Bolander was not deprived of all reasonable uses of Boom Island for it continued to use its land as it had for the preceding ten years. The trial court also determined that Bolander was not denied due process rights because

it appeared before the HPC and Community Development Committee. Finally, the trial court concluded that the City's denial of the building permit was not arbitrary or illegal because the City was undertaking a legitimate planning process and was simply awaiting the authorization for state funding. The court determined that the City made the denial in good faith and did not act in a discriminatory fashion because the denial of permits applied to the entire subject area. The trial court rejected Bolander's argument that the real reason for the City's refusal to grant the building permit was its desire to keep acquisition costs as low as possible. Bolander appeals from the entry of judgment granting the City's cross motion for summary judgment.

## ISSUE

1. Did the City's denial of Bolander's building permit application on land sought to be acquired by the City for purposes of developing a regional riverfront park constitute an unconstitutional taking without just compensation when Bolander was not denied its normal use of the property pending the taking?

2. Was the City's denial of Bolander's building permit application arbitrary and illegal, entitling Bolander to damages?

## ANALYSIS

### Standard of Review

The function of a court reviewing summary judgment is to determine whether there are any genuine issues of material fact for trial, and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979) (citation omitted). The parties stipulated to the facts so we confine ourselves to the question of whether the trial court erred in its application of the law.

### I

Bolander argues that from the time of its building permit application in September

1978 to the time it began vacating Boom Island as a result of the condemnation in September 1982 it suffered damages arising from the "massive inefficiencies" resulting from its inability to consolidate its business from two separate locations to the one at Boom Island. Bolander contends those damages are recoverable because the City prevented it from building solely for the purpose of avoiding construction that would increase the cost of future acquisition or condemnation, an arbitrary action depriving Bolander of the use of its property without just compensation.

■ "[P]rivate property shall not be taken, destroyed, or damaged for public use without just compensation therefore, first paid or secured." Minn. Const. Art. 1, § 13. In order to establish an unconstitutional taking, a landowner must show that the government's action or inaction has deprived him of " 'all the reasonable uses of his land.' " *Holaway v. City of Pipestone,* 269 N.W.2d 28, 30 (Minn.1978) (quoting *Czech v. City of Blaine,* 312 Minn. 535, 253 N.W.2d 272, 274 (1977)).

■ Bolander was not deprived of *all* beneficial uses of Boom Island. The company continued to use the property until 1982 in the same fashion as it had since 1969, despite the City's refusal to permit Bolander to build the office addition. Bolander fails to show loss of all reasonable uses of its property. At issue is a comprehensive planning objective to create a regional park in the Boom Island area. This comprehensive planning objective constitutes a proper regulation of property. *See McShane v. City of Fairbault,* 292 N.W.2d 253, 257 (Minn.1980). *See also Penn Central Transportation v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (no taking occurred even though the regulation prevented the landowner from using the land in some of its most beneficial ways).

## II

Bolander claims that the City arbitrarily and illegally sought to depress the value of Boom Island through the permit denial so that it could acquire the property more cheaply in the condemnation proceedings.

Although the deposition testimony of a planner for the City reveals that the City was concerned with increased acquisition costs if the building permit were granted, Bolander does not plead a tort, but simply concludes that "liability must follow respondent's tortious and illegal conduct in the instant case * * *".

A number of Minnesota cases suggest that a city has no discretion to deny a building permit application which fully complies with all requirements. These cases can be distinguished. In *Hay v. Township of Grow, Anoka County,* 296 Minn. 1, 206 N.W.2d 19 (1973) the city *clearly* discriminated between special use permit applicants. In addition, the city denied the appellant's application without any explanation. The Minnesota Supreme Court concluded that the City discriminated and acted arbitrarily. In *Zylka v. City of Crystal,* 283 Minn. 192, 167 N.W.2d 45 (1969), a city denied a special use permit application without giving reasons for the denial, thus allowing the Minnesota Supreme Court to conclude that the city acted arbitrarily. In *Maine Realty, Inc. v. Pagel,* 296 Minn. 362, 208 N.W.2d 758 (1973), a city denied a building permit application without clearly articulating its reasons for doing so. The Minnesota Supreme Court determined that the City's failure to contemporaneously record its reasons for denying the permit was arbitrary.

Here there is no evidence of discrimination or failure to give reasons for the permit denial. In addition Bolander has shown no Minnesota cases in which money damages were awarded for the wrongful denial of a building permit.

Bolander also claims damages for extra trucking costs and labor costs and expenses arising from the operation of two facilities. His authority is derived from cases in which the applicant for a building permit had started construction before the permits were denied. Bolander never started construction and knew before he

applied for the building permit that the City planned a park in the area. If Bolander had any possible remedy, it was a mandamus action, which he elected not to pursue.

■ The trial court concluded that the City's denial of the building permit was not arbitrary and illegal as a matter of law based on *Almquist v. Town of Marshan.* In *Almquist,* the Minnesota Supreme Court approved a city's limited moratorium on the issuance of building permits so that the city could keep open its planning options and conduct a study of long-range development. *Almquist v. Town of Marshan,* 308 Minn. 52, 65, 245 N.W.2d 819, 826 (1976). The court held that:

> [W]here a municipality enacts in good faith and without discrimination, a moratorium on development which is of limited duration, is valid if upon enactment, the study proceeds promptly and appropriate zoning ordinances are expeditiously adopted when it is completed.

*Id.* at 65, 245 N.W.2d at 826. In the present case, the City enacted a building permit moratorium to preserve the status quo while it obtained a clarification of the plans for the proposed park.

■ The moratorium enacted comes within the *Almquist* guidelines. The city did not treat other applications differently. The moratorium was enacted in good faith. Given the comments of several of the council members exhibiting concern for Bolander's rights, it cannot be said that there was bad faith. The moratorium was for a limited duration because it expired after sixty days or after the Metropolitan Council approved the open space master plan and acquisition authorization, whichever occurred first. Based on *Almquist,* the trial court correctly determined that the City enacted a valid moratorium for planning purposes and was not attempting to freeze land prices to insure lower acquisition costs. We conclude that the City's moratorium was a legitimate act of the City's police power, and constituted a reasonable freeze of the status quo pending a clarification of the park plans.

## DECISION

The City's denial of Bolander's permit application, which contained plans to construct an office addition on land sought to be acquired for park purposes, does not constitute a taking of property without just compensation because Bolander cannot show that it was denied all reasonable uses of the property. Because the City gave an explanation for its denial and did not act in a discriminatory fashion, the denial was not arbitrary or illegal.

Affirmed.

LESLIE, Judge, dissenting:

I respectfully dissent.