CASTLE DESIGN & DEVELOPMENT
CO., INC., Appellant,

v.

CITY OF LAKE ELMO, Respondent.

No. C7–86–641.

Court of Appeals of Minnesota.

Nov. 25, 1986.

Thomas R. Kelley, Minneapolis, for appellant.

Frederic W. Knaak, Arden Hills, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

In this declaratory judgment action, appellant alleges that the City of Lake Elmo's denial of its application for zoning variances was unreasonable and unconstitutional. The trial court held for the City. We affirm.

## FACTS

Appellant Castle Design & Development Co., Inc., ("Castle") is a real estate development company. Kenneth Gervais and Gregory Schmit are officers and shareholders of Castle.

Castle owns a lot (the "Castle property") located on Lake DeMontreville in the City of Lake Elmo, in an area zoned to permit only single family homes. All the lots surrounding the Castle property contain single family homes.

The Castle property was previously owned by Jerome and Eleanor Bratsch as part of a larger parcel. In 1977, the Bratsches sold part of their parcel. In the summer of 1979, they contacted Gervais about selling him the remaining portion.

Gervais asked Peter Kluegel, then Lake Elmo's building inspector, whether the remaining property constituted a buildable lot. Kluegel told him that Lake Elmo's ordinances required a one-acre lot size for building in that area, and since the lot was undersize it would require variances. Kluegel assured Gervais and Schmit that obtaining the necessary variances would not be a problem because all the lots in the area were undersize and received variances. Based on the representations of Kluegel, Castle decided to purchase the property.

After purchasing the property, Castle applied twice to the Lake Elmo City Council for variances so it could build a single family home. The first application, considered and denied by the City Council on October 4, 1983, requested the following three variances:

1. *Lot size.* The Castle property has .39 acres above Lake DeMontreville's normal ordinary high water mark; the ordinance required 1.5 acres. (The 1 acre requirement cited by Kluegel was based on a prior municipal code which had been superseded by the time Castle applied.)

2. *Structure setback from shoreline.* The residence was proposed to be 60 feet from the normal ordinary high water mark; the ordinance required 100 feet.

3. *Septic system setback.* The primary drainfield was proposed to be 65 feet from the high flood mark; the ordinance required 75 feet.

The City Council notified Gervais that it had denied the application because of the number and degree of the variances requested and its concern over the design of the proposed septic system. Lake Elmo's

municipal code required that septic systems have sufficient area for both primary and secondary drainfields, so that a secondary drainfield could be installed if the primary drainfield failed. Castle's proposed septic system provided for the trenches of the secondary drainfield to be installed within the trenches of the primary drainfield, a so-called "piggy-back" design. The code did not prohibit such a design when Castle applied for variances, but it was subsequently amended to do so.

Castle modified its building plan so that it would not require a variance for the septic system setback, and reapplied for the other two variances. The City Council considered and denied Castle's second application on November 15, 1983. It wrote Gervais that it was denying the application for the same reasons as before, *i.e.*, "the variances are too great, the lot too small, and the chance of sewer system failure too high."

Castle then brought this action for a declaratory judgment that Lake Elmo's action was unreasonable and directing it to grant the variances. The trial court ruled for Lake Elmo. It concluded that Lake Elmo's decision to deny the variances was reasonable because it was based on a finding that, as a result of sewer problems in the area, allowing a home to be built on such a small lot would adversely affect the health and welfare of the citizens of Lake Elmo. The court also found that Castle had failed to establish undue hardship as defined by Minn.Stat. § 462.357, subd. 6(2) (1984), and the Lake Elmo municipal code. Castle appeals.

### ISSUES

1. Is Castle's suit barred by laches?

2. Was Lake Elmo's denial of Castle's application for variances lawful?

### ANALYSIS

#### I.

Lake Elmo argues that Castle's lawsuit is barred by laches because the time to act was in 1977, when the Bratsches originally divided the property and created the nonconforming lot. Lake Elmo relies entirely on *Filister v. City of Minneapolis,* 270 Minn. 53, 133 N.W.2d 500 (1964), *cert. denied,* 382 U.S. 14, 86 S.Ct. 47, 15 L.Ed.2d 10 (1965). In *Filister,* plaintiffs sought to build apartment buildings in a neighborhood which had been developed in compliance with zoning ordinances limiting construction primarily to one and two family homes. They sought a declaratory judgment that the zoning restrictions were an unconstitutional taking.

The supreme court held that plaintiffs were guilty of laches because "the time for an owner to speak is when the zoning ordinance is first adopted" and not after others have invested in reliance on the restrictions. *Id.* at 58–59, 133 N.W.2d at 504. It therefore required plaintiffs to demonstrate that striking down the ordinance would not harm neighboring property improved in reliance on the ordinance. *Id.* at 60, 133 N.W.2d at 505.

■ *Filister* is inapplicable because Castle is not challenging the validity of Lake Elmo's zoning ordinance and does not seek to put its property to a nonconforming use. Rather, it seeks a variance to enable it to develop its property in the same manner as neighboring properties. In *Filister,* moreover, the plaintiffs' laches did not bar their suit but merely increased their burden of proof.

#### II.

■ The standard of review in all zoning matters is whether the local authority's action was reasonable. *VanLandschoot v. City of Mendota Heights,* 336 N.W.2d 503, 508 (Minn.1983). There the supreme court defined reasonableness as follows:

We examine the municipality's action to ascertain whether it was arbitrary and capricious, or whether the reasons assigned by the governing body do not have "the slightest validity" or bearing on the general welfare of the immediate area, * * * or whether the reasons given

by the body were legally sufficient and had a factual basis.

*Id.* at 508 (citations omitted). Minn.Stat. § 462.357, subd. 6 (1984), gives cities the power to grant variances where zoning ordinances may cause "undue hardship." *Id* at 507.

In variance cases, reasonableness is measured by the standards set out in the local ordinance. *Id.* at 508 n. 6. A city council has broad discretion in determining whether to grant variances. *Id.* at 509. An applicant for a variance has a heavy burden to show that approval is appropriate, since a variance allows property to be used in a manner forbidden by zoning ordinances. *Luger v. City of Burnsville,* 295 N.W.2d 609, 612 (Minn.1980).

Our role is to review the City Council's action by examining the record independent of the findings and conclusions of the district court. *VanLandschoot,* 336 N.W.2d at 508. The record includes evidence before the City Council when it made its decision as well as additional evidence at trial relevant to the issues raised and considered by the City Council. *Id.* at 509 n. 8.

Castle argues that it was unreasonable and unconstitutional for Lake Elmo to deny its application because it had previously granted similar variances to similarly situated landowners. Castle asserts it need not meet the statute's or the ordinance's variance requirements, and it has not addressed those requirements in its briefs. Instead, Castle argues it need only show that its application is similar to those of prior successful applicants.

Lake Elmo contends it properly denied Castle's application because Castle failed to meet its burden of demonstrating the variances were appropriate, and that its application was distinguishable from those previously granted other landowners.

Castle relies primarily on *Northwestern College v. City of Arden Hills,* 281 N.W.2d 865 (Minn.1979). In *Northwestern College,* the plaintiff, a private college located in a residential district, applied for a special-use permit to enable it to build a fine-arts center. Another private college, Bethel, also located in a residential district, applied shortly after Northwestern for a building permit to expand its fine-arts center. The city granted Bethel's building permit, but denied Northwestern's special-use permit two months after granting Bethel's on the ground that a private college was an impermissible use in a residential district.

The supreme court held that the city's denial of Northwestern's special-use permit was arbitrary and a denial of equal protection. It reasoned:

> A zoning ordinance must operate uniformly on those similarly situated. * * * As we made clear in *Hay v. Township of Grow,* 296 Minn. 1, 206 N.W.2d 19 (1973), the equal protection clauses of the Minnesota Constitution and of the Fourteenth Amendment * * * require that "one applicant not be preferred over another for reasons unexpressed or unrelated to the health, welfare, or safety of the community or any other particular and permissible standards or conditions imposed by the relevant zoning ordinances." 296 Minn. 8, 206 N.W.2d 24.

281 N.W.2d at 869.

The supreme court found that the city's unjustified discrimination between the colleges fell within *Hay's* prohibition against unequal treatment of similarly situated parties:

> The almost simultaneous filing of two applications * * * clearly mandated that both applicants be accorded equal treatment * * *. No legitimate interest of the municipality was furthered by the differential treatment accorded plaintiff's application.

281 N.W.2d at 869 (quoting *Hay,* 296 Minn. at 7, 206 N.W.2d at 23).

In *Hay,* two applicants sought special-use permits within one week of each other to build mobile home parks. The first party's application was denied merely because the other application had been considered and granted first, and the town, without demonstrated justification, decided it did not want two mobile home parks.

Lake Elmo argues that *Northwestern College* is distinguishable because that case involved special-use permits, not variances. Castle responds that *Northwestern College's* analysis applies to variances as well as to special-use permits.

■ We need not address this issue, however, because *Northwestern College* is inapplicable for another reason. In that case, the supreme court found "unequal treatment of similarly situated parties" because one party's application was approved "at the same time" the other's was tabled for further review (and eventually denied). 281 N.W.2d at 869. The party whose application was approved had applied "shortly after" the other party. *Id.* at 867. In *Hay,* the court similarly relied on the fact the applications were "almost simultaneously" filed. 206 N.W.2d at 23.

Castle did not initially apply until June 1983, and its applications were not considered and denied until October and November 1983. The applications Castle compares itself to cover a four-year period. The most recent application approved in March 1983 did not involve a piggyback septic system. The most recent variances approved with a piggyback system were in 1982. All prior variances involved larger lots.

■ The timing of applications is significant because of the rule that a

> municipality cannot be estopped from correctly enforcing [a zoning] ordinance even if the property owner relied to his detriment on prior city action.

*Frank's Nursery Sales v. City of Roseville,* 295 N.W.2d 604, 607 (Minn.1980); *see also Prior Lake Aggregates, Inc. v. City of Savage,* 349 N.W.2d 575, 580 (Minn.Ct.App. 1984) (city cannot be bound to issue special use permit by prior erroneous application of zoning ordinance).

Since *Northwestern College* does not apply, the issue becomes whether Lake Elmo's action was reasonable.

■ Lake Elmo's zoning ordinance provides that variances should be granted only when it is demonstrated that the "variance would not be materially detrimental to the purposes of this Ordinance, or to property in the same zone." Lake Elmo, Minn., Code § 301.060C(1)(b)(6) (1979). One of the ordinance's purposes is "to protect and conserve [the community's] natural resources * * * so as to promote and preserve the public health, safety and general welfare." *Id.* § 301.020A.

The Lake Elmo City Council denied Castle's application largely because of concern over the proposed piggyback septic system. In a letter to the Council regarding Castle's first application, the Minnesota Department of Natural Resources questioned the feasibility of the design. At trial, the City's consulting engineer, Larry Bohrer, testified that the Council's concerns were justified because the proposed system did not conform to standard construction practice, and he described the specific problems posed by the design. There was also much testimony about the City's history of septic system problems resulting from its high groundwater table and its soil composition. Although Castle's proposed system did not violate the zoning ordinance, the extremely small lot size required a variance, which resulted in the need for the piggyback design.

Given the City's broad discretion and Castle's heavy burden, we cannot say the City's decision was unreasonable.

■ Castle has also failed to show that it satisfied another requirement for a variance. Gervais and Schmit (and hence Castle), as a result of their talks with Kluegel, had actual notice when they purchased the property that it was undersize. If an applicant for a variance purchased the property with actual or constructive notice of the zoning ordinance's restrictions, then its hardship is self-created and does not constitute "undue hardship" as defined by Minn. Stat. § 462.357, subd. 6(2) (1984). *Hedlund v. City of Maplewood,* 366 N.W.2d 624, 627 (Minn.Ct.App.1985).

## DECISION

The City's denial of Castle's variance was reasonable and constitutional.

Affirmed.