Franklin P. KOTTSCHADE, Respondent,

v.

CITY OF ROCHESTER, Appellant.

No. C3–94–2481.

Court of Appeals of Minnesota.

Sept. 19, 1995.

Review Denied Nov. 15, 1995.

David E. Oslund, Richard H. Kyle, Jr., Robins, Kaplan, Miller & Ciresi, Minneapolis, for respondent.

Terry L. Adkins, Rochester City Attorney, Rochester, for appellant.

Considered and decided by NORTON, P.J., TOUSSAINT, C.J., and FOLEY, J.*

## OPINION

NORTON, Judge.

Respondent Franklin P. Kottschade brought suit against appellant City of Rochester challenging the city's denial of a series of applications for permission to convey land in the northern tract of his property. The conveyances included land designated on the official city map as right-of-way for future road and highway improvements. Kottschade also challenged the city's conditional approval of his later application to vacate an easement on the southern tract of his property.

The district court granted summary judgment to Kottschade on his equal protection claims and on his taking and substantive due process claims regarding the southern easement dispute. The district court granted summary judgment to the city on all other claims. Kottschade stipulated to dismiss with prejudice the taking claim on the southern easement. The issue of damages was then determined in a jury trial. Kottschade was awarded $950,000 for damages as to the northern tract, $70,000 for damages as to the southern easement, and $372,125.76 in costs and attorney fees under 42 U.S.C. § 1988 (Supp.1993).

On appeal, the city contends, and we agree, that Kottschade failed to show similarly situated properties to support his equal protection claims. Further, we agree that the city showed a rational basis for its actions. We also agree that the actions of the city do not meet the "irrational," "extraordinary," or "egregious" threshold required for a substantive due process violation. Kottschade filed a notice of review of summary judgment to the city on issues of taking and substantive due process regarding the conveyance applications; we affirm those decisions. Accordingly, we affirm in part and reverse in part.

## FACTS

In 1978, appellant City of Rochester (the city) and Olmsted County published a study determining the need for improvements in the highway system in the northwest part of the city. The city was concerned with heavy traffic at 37th Street Northwest and U.S. Highway 52 because of the IBM plant located on the west side of Highway 52 at 37th Street. Another general concern was future growth and development in the area. The study recommended a widening of 41st Street Northwest and the addition of a bridge and on-and-off ramps to Highway 52 at 41st Street.

Between 1978 and 1987, respondent Franklin P. Kottschade acquired a tract of real property, comprising approximately 23.49 acres, located in the northeast quadrant of the intersection of Highway 52 and 41st Street Northwest. He acquired all but one small portion of that property between 1978 and 1981. Kottschade's predecessor in title had platted this property in 1964 as Silver Acres Subdivision, pursuant to the city's subdivision regulations. The western portion of the subdivision, later purchased by Kottschade, remained undeveloped. Kottschade purchased the property to develop the site for a retail shopping mall, an office building, a grocery store, a Target store, and two restaurants.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

In April 1980, Kottschade arranged to sell 7.1 acres to Dayton Hudson Corporation for the development of a Target store. In June 1980, the city council initiated the process of amending the city map to accommodate the development, including the Target store, on Kottschade's property. The amended map was to conform with the latest plans regarding the proposed interchange at U.S. Highway 52 and 41st Street. The amendment designated less right-of-way on Highway 52 along the southern end of Kottschade's property, thus allowing additional land to be developed for parking area. The amended city map was adopted on September 2, 1980. It designated 4.67 acres of Kottschade's property as right-of-way along 41st Street and Highway 52.

In June 1980, Kottschade applied for a variance from subdivision regulations to allow him to convey a portion of his property to Target. He withdrew the application, amended it, and filed a second variance application on September 26, 1980. The second application contained three deficiencies. The primary deficiency was that the property to be conveyed included public street right-of-way along Highway 52 and 41st Street Northwest, as indicated on the amended official city map. The city council denied the variance request. Kottschade did not appeal this decision.

In July and September of 1981, Kottschade submitted two separate conveyance applications to create the Target parcel. Neither of these applications involved property designated as a right-of-way on the official city map. The council approved both applications. Kottschade then conveyed property to Dayton–Hudson Corporation in December 1981, and a Target store opened for business on October 17, 1982.

On April 19, 1984, Kottschade applied for approval of another conveyance, which included most of the 4.67 acres designated as a right-of-way on the official city map. The Rochester–Olmsted Consolidated Planning Department administratively denied Kottschade's application because of the excessive number of platted lots included in the conveyance and because the conveyance involved "the need for the dedication of right-of-way."

Kottschade did not apply for a variance, nor did he appeal this decision. In 1986, the planning staff denied another application for a conveyance of land located entirely in the official map right-of-way. Again, Kottschade neither applied for a variance nor appealed the decision.

In late 1985 and early 1986, the city completed its plans for the Highway 52 and 41st Street Northwest interchange and began eminent domain proceedings to acquire the right-of-way from Kottschade. On September 24, 1986, the court-appointed condemnation commissioners awarded Kottschade $938,740 ($5.50 per square foot for the land and $.60 per square foot for severance damages) for the condemned property. The city condemned only 2.72 acres of the 4.67 acres that had been designated on the city map.

On May 6, 1987, Kottschade petitioned the city to vacate an unused street easement along 37th Street Northwest, the southern boundary of his property. The city offered to vacate the easement on condition that Kottschade pay $5.50 per square foot, based on the comparable value determined in the condemnation proceeding. The city tabled formal action on Kottschade's application until final determination of the parties' appeals regarding the condemnation proceeding. On November 7, 1988, the city formally conditioned approval of Kottschade's request for vacation of the easement on his payment of $123,750 to the city. Kottschade then filed this action against the city.

## ISSUES

### Highway 52 and 41st Street Northwest Interchange

1. Did the city violate respondent's right to equal protection when it denied his applications to convey portions of platted property?

2. Did the city violate respondent's right to just compensation for a taking of his property when it denied his applications to convey portions of platted property?

3. Did the city violate respondent's right to substantive due process when it denied his

applications to convey portions of platted property?

### 37th Street Northwest Easement

4. Did the city violate respondent's right to substantive due process when it conditioned his request for vacation of an easement upon a cash payment?

5. Did the city violate respondent's right to equal protection when it conditioned his request for vacation of an easement upon a cash payment?

## ANALYSIS

█ In reviewing a grant of summary judgment, this court must determine whether any genuine issues of material fact existed before the district court and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). This court must view the evidence in a light most favorable to the party against whom summary judgment was granted and resolve all doubts and factual inferences in favor of the nonmoving party. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988); *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981).

### Highway 52 and 41st Street Northwest Interchange

In 1980, Kottschade began a process of resubdividing the northern portion of his property to a configuration he deemed necessary to support his proposed development.[1] The Rochester Code of Ordinances provides two methods for subdividing: (1) replatting the entire tract; or (2) creating a parcelization of a portion of the property. Rochester Code of Ordinances §§ 31.02–31.24 (replatting), 31.26 (conveyance of portion of platted land). Kottschade chose to reconfigure portions of his property using a series of conveyances.

The city ordinance provides that a person may not convey a portion of a platted lot unless certain conditions are met. Rochester Code of Ordinances § 31.26, subd. 1. The ordinance provides:

[T]he planning department may approve a conveyance of a portion of a platted lot under the following circumstances if in each instance the new and residual parcels of land which would result from the conveyance meet the frontage and area requirements of the zoning ordinance:

(1) When it is desired to detach a portion of a platted lot and add it to an adjoining platted lot.

(2) When it is desired to divide two platted lots into not more than three parcels and the dedication of public utility and street easements is not involved.

(3) When it is desired to divide one platted lot into not more than three parcels and the dedication of public utility or street easements is not involved.

Rochester Code of Ordinances § 31.26, subd. 2.

Kottschade's applications in 1980, 1984, and 1986 involved the dedication of street easements, because the land he sought to convey in those particular applications included a portion of the right-of-way on Highway 52 and on 41st Street Northwest designated on the official city map. The dedication issue was not, however, the only infirmity in Kottschade's 1980 and 1984 applications, although the dedication issue was admittedly the major infirmity.

Kottschade applied for a variance in conjunction with his application in 1980 but did not do so regarding his later applications in 1984 and 1986. He did not appeal any of the city's decisions. He has not demonstrated how he could have satisfied the conditions required for a variance. Instead, he brought various constitutional claims that are the subject of this appeal.

1. We note that Kottschade filed his action in 1988. The trial court determined that the city's conduct was a "continuing wrong," which tolled the six-year statute of limitations and allowed Kottschade to seek relief for city conduct that occurred prior to 1982. Because we hold that the city's conduct prior to 1982 did not violate Kottschade's constitutional rights, we need not address the merits of the statute of limitations issue. But, for purposes of convenience in our analysis, we will assume that Kottschade properly raised issues regarding the city's conduct in 1980.

## 1. Equal Protection

■ "Equal protection requires that persons similarly situated be treated similarly." *Lidberg v. Steffen,* 514 N.W.2d 779, 784 (Minn.1994) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). The government may treat similarly situated persons differently when a distinction in treatment bears a "rational relation to a legitimate government objective." *Bannum, Inc. v. City of St. Charles,* 2 F.3d 267, 271 (8th Cir.1993) (quoting *Kadrmas v. Dickinson Pub. Sch.,* 487 U.S. 450, 461–62, 108 S.Ct. 2481, 2489, 101 L.Ed.2d 399 (1988)). The Minnesota Supreme Court has stated that in zoning matters:

> [T]he equal protection clauses of the Minnesota Constitution and of the Fourteenth Amendment of the United States Constitution require that "one applicant not be preferred over another for reasons unexpressed or unrelated to the health, welfare, or safety of the community or any other particular and permissible standards or conditions imposed by the relevant zoning ordinances."

*Northwestern College v. City of Arden Hills,* 281 N.W.2d 865, 869 (Minn.1979) (quoting *Hay v. Township of Grow,* 296 Minn. 1, 8, 206 N.W.2d 19, 24 (1973)).

The district court determined that the city violated Kottschade's constitutional right to equal protection, because the city failed to require two other property owners, Pennington Park and Plaza 41, to dedicate right-of-way for the Highway 52 interchange project when they sought to subdivide their property. The city contends that neither of these property owners is similarly situated to Kottschade. We agree.

■ The 1983 Pennington Properties application is not similarly situated in time to Kottschade's 1980, 1984, and 1986 applications. *See Northwestern College,* 281 N.W.2d at 869 (parties similarly situated where decision on applications made at "same time"); *Hay,* 296 Minn. at 7–8, 206 N.W.2d at 23–24 (similarly situated where "almost simultaneous filing" of applications occurred); *Castle Design & Dev. Co. v. City of Lake Elmo,* 396 N.W.2d 578, 582 (Minn.App.1986) (distinguishing *Northwestern College* and *Hay,* because they involved nearly simultaneous applications or decisions).

In addition, the Pennington Properties application is not similarly situated to Kottschade's application even though the Pennington Properties subdivision that borders on Highway 52 and 41st Street Northwest, north of Kottschade's property, may be similarly situated geographically to Kottschade. Unlike Kottschade's 1980, 1984, and 1986 applications, the Pennington Properties application proposed a conveyance of land that did not intrude on any right-of-way designated on the official city map. In fact, the city treated Kottschade and Pennington Properties similarly when presented with similar applications. As it did with Pennington Properties, the city approved Kottschade's 1981 applications that did not propose to convey land that crossed a right-of-way on the official city map.

■ The Plaza 41 application is not similarly situated for a combination of reasons. First, the 1980 Plaza 41 application and most of the Kottschade applications denied by the city are not close in time.[2] *See, e.g., Northwestern College,* 281 N.W.2d at 869 (holding parties similarly situated where city considered applications at same time). Second, the Plaza 41 application was for a preliminary platting of property, involving a set of regulations different from those relating to Kottschade's applications.[3] Finally, the record

---

2. We question whether the September 1980 Kottschade application is sufficiently close in time to the Plaza 41 application, but we need not decide that issue, because there are sufficient other factors to demonstrate that the applications are not otherwise similarly situated.

3. We also note that Kottschade's applications contained other deficiencies, independent of the dedication issue, that would cause rejection. In contrast, no unresolved issues remained with the

Plaza 41 application when the city council decided not to require Plaza 41 to dedicate land abutting Highway 52. The record shows that Plaza 41 agreed to dedicate utility and other street easements to obtain approval of its subdivision. Because there is some dispute regarding whether the city would have otherwise approved Kottschade's applications if he had complied only with the dedication requirement, we do not rest

contains maps that show Plaza 41's property was not at an interchange corner and abutted only on a portion of a proposed off-ramp for Highway 52. By contrast, the interchange directly serviced Kottschade's property, and the right-of-way on Kottschade's property involved 41st Street Northwest, an off-ramp from Highway 52, and a frontage road on Highway 52. The dedication needs for the Kottschade and Plaza 41 properties were, therefore, substantially dissimilar. As this court has noted, a regulation related to dedication of land for public use in subdividing property "is obviously applied to subdividers differently depending on the location of their land." *Middlemist v. City of Plymouth,* 387 N.W.2d 190, 193 (Minn.App.1986).

The record shows that the city considered these differences in reviewing dedication issues. In a memo to the mayor and city council in 1980, the city administrator noted that dedication matters involve some inequities, specifically:

1. Some R.O.W. [right-of-way] needs may be dissimilar from property to property.

2. Some R.O.W. dedications may serve the affected property directly, while others may serve the entire community.

Undisputed evidence shows that the Pennington Properties and Plaza 41 applications were not similarly situated to the Kottschade applications. Because Kottschade failed to show any similarly situated property owners whom the city treated differently from him, his equal protection claim must fail. On this record, the district court should have granted summary judgment to the city.

## 2. Taking

In challenging summary judgment on his taking claim, Kottschade contends that the city's requirement that he dedicate land for street and highway improvements as a condition for subdivision approval, commonly referred to as "subdivision exaction," constitutes a taking of his property without just compensation. We disagree.

our analysis on this distinction between the Plaza

Minn.Stat. § 462.358, subd. 2b (1994), provides that a municipality may require that a "reasonable portion" of a proposed subdivision be dedicated to public use for, *inter alia,* "streets" and "roads." The Minnesota Supreme Court has determined that the statute is facially constitutional; a municipality may require dedication of land for public use as a condition for subdivision approval if a "reasonable relationship [exists] between the approval of the subdivision and the municipality's need for the land * * *." *Collis v. City of Bloomington,* 310 Minn. 5, 17–18, 246 N.W.2d 19, 26 (1976).

To support his taking claim, Kottschade relies primarily on a recent United States Supreme Court case, *Dolan v. City of Tigard,* —— U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). In that case, the Supreme Court noted:

> [T]he government may not require a person to give up a constitutional right—here the right to receive just compensation when property is taken for a public use— in exchange for a discretionary benefit conferred by the government where the property sought has little or no relationship to the benefit.

*Id.* at ——, 114 S.Ct. at 2317.

█ The city has the burden of proving the required relationship between the property development and the city's need for land dedication. *See id.* at ——, 114 S.Ct. at 2321 (recognizing city has burden of proof). To meet that burden, the city must show an "essential nexus" exists between the "legitimate state interest" and the condition exacted by the city. *Id.* at ——, 114 S.Ct. at 2317. If that nexus exists, the court must then decide whether the city has demonstrated a "rough proportionality" between the planned development and the municipality's requirement for a dedication of land. *Id.* at —— — ——, 114 S.Ct. at 2319–20.

> No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature

41 and Kottschade.

and extent to the impact of the proposed development.

*Id.*

Although we must apply the "essential nexus" test of *Dolan*, that test is not satisfied here. Indeed, the facts here are distinguishable from *Dolan*. In *Dolan*, the city had required the property owner to dedicate land for a greenway and a pedestrian/bicycle pathway easement in exchange for the city's approval of a building permit to double the size of a business building. *Id.* at ——, 114 S.Ct. at 2314. The Supreme Court determined that the city's finding that "the creation of the pedestrian/bicycle pathway 'could offset some of the traffic demand * * * and lessen the increase in additional congestion' " was merely a conclusory statement that failed to meet the city's burden to show "rough proportionality" between the proposed development and the city's need for a pedestrian/bicycle pathway easement. *Id.* at ——–——, 114 S.Ct. at 2321–22.

█ In contrast, here the city sought dedication for a highway interchange right-of-way. There is no dispute that the development that Kottschade planned (a Target store, grocery store, shopping mall, and restaurants) would increase traffic and provide a further need for construction of the highway interchange and the widening of 41st Street Northwest directly adjacent to his property. *See id.* at ——, 114 S.Ct. at 2321 (acknowledging *"no doubt* that the city was correct in finding that the larger retail sales facility proposed by petitioner will increase traffic in the streets," and that "[d]edications for streets, sidewalks, and other public ways are generally reasonable exactions to avoid excessive congestion from a proposed property use") (emphasis added).

We hold that the city's basis for denying Kottschade's conveyance applications meets the "rough proportionality" test in *Dolan* and does not constitute a taking.

**3. Substantive Due Process**

Kottschade contends the district court erred by granting summary judgment to the city on his claim that the city's denial of his conveyance applications denied him substantive due process. We disagree.

█ The test of whether a city has violated substantive due process rights in a zoning action has two parts:

[F]irst, whether there has been a deprivation of a protectible property interest and, second, whether the deprivation, if any, is the result of an abuse of governmental power sufficient to state a constitutional violation.

*Northpointe Plaza v. City of Rochester*, 465 N.W.2d 686, 689 (Minn.1991) (citing *Littlefield v. City of Afton*, 785 F.2d 596, 603–08 (8th Cir.1986)). The parties concede that this case involves a protectible property interest. Thus, the dispute here involves the second factor described above. The supreme court has recognized that "a substantive due process claim in the zoning context exists, if at all, only in extraordinary situations and will not be found in 'run-of-the-mill' zoning disputes." *Id.* at 690. The governmental action must be "egregious," "irrational," or "extraordinary." *Id.* at 691.

█ Courts generally have found substantive due process claims "actionable in zoning cases only where the conduct of the decisionmaker was either motivated by personal or political animus." *Id.* (citations omitted). Kottschade claims that the city's actions regarding his conveyance applications were motivated by "personal or political animus" against him, but there is nothing in the record to support his claim and to overcome the city's motion for summary judgment on this basis. *See* Minn.R.Civ.P. 56.05 (adverse party in summary judgment motion "may not rest upon * * * mere averments"). In contrast, the record demonstrates that the city was following requirements in its code of ordinances when it denied Kottschade's conveyance applications.[4] On this record, the

---

**4.** Kottschade contends that the city attorney issued various memoranda stating that he did not think there was a legal basis for denying Kottschade's applications. Kottschade misstates the record. The city attorney's memoranda dated July 27, 1981, and September 3, 1981, related to Kottschade's 1981 applications approved by the city. Neither of these applications involved conveyance of land that crossed the designated right-of-way on the official city map.

city's actions clearly do not meet the conduct thresholds required by *Northpointe Plaza,* 465 N.W.2d at 691, to support a substantive due process claim. *See Chesterfield Dev. Corp. v. City of Chesterfield,* 963 F.2d 1102, 1105 (8th Cir.1992) (enforcement of valid or invalid zoning ordinance does not give rise to substantive due process claim).

### *37th Street Northwest Easement*
#### 4. Substantive Due Process

The city contends that the district court erred in granting summary judgment to Kottschade on his claim that he was denied substantive due process in connection with the 37th Street Northwest easement. The district court found:

[N]o rational basis for the city's action has been shown, nor has any legitimate governmental interest been demonstrated. Instead, [the city's] conduct in seeking to exact its price appears as a calculated attempt to reach the money which Kottschade was paid in the condemnation proceeding in retaliation for his lawful exercise of a right not to dedicate to the City land for the highway interchange project.

The district court concluded that the city's retaliatory conduct "breached the standard of egregious conduct required to show a violation of substantive due process as outlined in *Northpointe Plaza.*" We disagree.

To support his claim that the city's actions were vindictive and irrational, Kottschade cites a portion of a memo from the city administrator's office suggesting to the mayor and common council that the council could condition the vacation of the easement on a cash payment. The district court quoted this isolated portion of the memo to support its finding of vindictiveness. But a review of the entire memorandum shows that the city's motivation was not retaliatory or irrational, but rather was based on reason and a previously adopted policy regarding easements. The memorandum states:

In November of 1984, the Council adopted a policy guideline which states in part "if the property owner or owners who request the vacation otherwise owned or have an interest in other property needed by the City for another public purpose, the City may attempt to obtain a favorable concession on said acquisition from owner or owners of the other property interest needed as a condition of granting the vacation requested."

Based on this policy guideline, the city administrator suggested that the council could condition the vacation of the easement on Kottschade's forgoing a portion of the condemnation award relating to the northern portion of his parcel.

Had Kottschade platted his property, rather than carving it up piecemeal, the easement and right-of-way issues could have been before the city council together for negotiation and land exchange in consideration of vacating the easement. As early as 1980, the city council passed a resolution that an acceptable plan for modification of the roadways at Highway 52 and 37th Street Northwest had been developed, with the result that certain street easements were made unnecessary. The resolution then concluded:

NOW, THEREFORE, BE IT RESOLVED by the Common Council of the City of Rochester that:

(1) The attached "Proposed Traffic Plan" dated 7/17/80 be deemed an acceptable plan for the modification of existing roadways at the intersection of T.H. 52 and 37th St. N.W.

(2) That the City of Rochester will consider *negotiating* with adjacent property owners for the vacation of any existing street right-of-way not needed after the roadway modifications are constructed.

(Emphasis added.) By dividing his parcel piecemeal over a period of seven years, Kottschade did not address the 37th Street Northwest easement issue until 1987, a year after the city commenced condemnation proceedings for a right-of-way on the northern boundary of his property. Both parties appealed the condemnation decision, and the appeal was still pending when Kottschade filed his application for vacation of the 37th Street Northwest easement.

Kottschade does not contend that the city's policy of vacating easements in exchange for other property it needed is a violation of law. On the record here, there is no question that

the city's actions do not meet the threshold required to sustain a claim for violation of substantive due process rights. *See Chesterfield Dev. Corp.*, 963 F.2d at 1105 (city's knowing enforcement of invalid zoning ordinance, even if in bad faith, would not constitute "truly irrational" action that could give rise to substantive due process claim).

## 5. Equal Protection

The city contends the district court erred in granting summary judgment to Kottschade on his claim that the city violated his equal protection rights when it conditioned its vacation of the 37th Street Northwest easement on a cash payment by Kottschade. We agree.

■■ The party challenging a city's enforcement of regulations has the burden to show by a "clear preponderance of the evidence" that the city discriminatorily enforced the regulations. *State v. Larson Transfer and Storage*, 310 Minn. 295, 302, 246 N.W.2d 176, 181 (1976). As the city notes, the district court switched the burden of proof and required the city to show that it had treated another land owner identically to Kottschade, that is, by requiring a cash payment in exchange for vacation of a street or right-of-way easement. Here the court erred. The district court should have required Kottschade to produce evidence that a similarly situated property owner was not required to provide consideration in exchange for vacation of an unused easement. The record contains no such example and, therefore, Kottschade's equal protection claim must fail.[5]

Further, equal protection considerations do not require that the city treat Kottschade identically with other similarly situated persons. The city may treat differently persons who are similarly situated, " 'provided the discrimination is based on a reasonable distinction which is supported by the facts.' " *Id.* at 303, 246 N.W.2d at 181 (quoting *Fabio v. City of St. Paul*, 267 Minn. 273, 277, 126 N.W.2d 259, 262–63 (1964)).

The district court found that the city provided no reasonable rationale for its treatment of Kottschade. The district court characterized the city's requirement of a cash payment as purely "retaliatory." The record does not support this finding. The city attempted to apply its policy regarding easements.

> Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.

*Federal Communication Comm'n v. Beach Communications*, ―― U.S. ――, ――, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993).

■■ As the city explained, an exchange of property here was precluded because Kottschade never sought to replat his entire property; instead, he parceled his property in stages and sought vacation of the easement after the condemnation proceedings. Had he applied for vacation of the easement earlier, an exchange of real property could have been possible. As it was, however, a property exchange was not available because the city had been forced to condemn the property; a cash exchange, based upon the land's value, was the remaining viable option. Even if the city treated Kottschade different-

---

**5.** All but three of the applications contained in the record are not similarly situated to Kottschade's application because they do not meet the time requirements for an equal protection claim in zoning matters. *See Stotts v. Wright County*, 478 N.W.2d 802, 806 (Minn.App.1991) (similarly situated requirement for equal protection claim not met where variance applications "are separated in time"), *review denied* (Minn. Feb. 11, 1992). The three remaining applications (Independent School District # 525, Arbitration Development Partnership, and the City of Rochester) fall within the 18–month period between the filing of Kottschade's application and the city's final decision. Even if these meet the

time requirement, a decision we need not make here, other factors make them dissimilar to Kottschade's. Two of the three applications involve consideration in the form of alternate easements or rights-of-way to be designated on the property. The remaining application is by the City of Rochester to vacate a portion of a public street for development as part of a three-level retail mall. But the application states that the city had entered into an "agreement" with the developer, thus indicating the vacation of the easement was a product of this agreement and some consideration contained therein. Without information about the agreement, this application cannot support Kottschade's claim.

ly from other similarly situated persons, the record contains evidence that the city's actions were based on a reasonable distinction between him and other property owners.

The district court erred in granting summary judgment to Kottschade. The court should have granted summary judgment to the city on this equal protection claim.

## DECISION

The district court erred in granting summary judgment to Kottschade on each of his equal protection claims and on his substantive due process claim regarding the 37th Street Northwest easement. The district court should have granted summary judgment to the city on these claims and did not err in doing so on the claims for which Kottschade noticed appellate review. The judgment of damages, costs, and attorney fees to Kottschade is vacated.

**Affirmed in part and reversed in part.**