**CARPENTERS DISTRICT COUNCIL OF NEW ORLEANS AND VICINITY, et al.**

v.

**DILLARD DEPARTMENT STORES, INC., D.H. Holmes, Ltd., et al.**

**Stephen J. PLESCIA and Alan A. Endermann, for themselves and on behalf of all others similarly situated**

v.

**DILLARD DEPARTMENT STORES, INC. and D.H. Holmes Company, Ltd.**

Civ. A. Nos. 89–3680, 89–3751.

United States District Court, E.D. Louisiana.

Oct. 25, 1991.

William Lurye, Gardner, Robein & Urann, Metairie, La., and R. Monroe Garner, New Orleans, La., for plaintiffs.

J. Forrest Hinton and Stephen P. Beiser, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., for defendant Dillard Dept. Stores, Inc.

John W. Lindner II, Adams & Reese, New Orleans, La., for defendant Federal Ins. Co.

## ORDER AND REASONS

RONALD A. FONSECA, United States Magistrate Judge.

Defendants have filed a Motion for Summary Judgment contending that the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (WARN), is unconstitutional in that: 1) it is unconstitutionally vague; 2) violates the taking clause of the Fifth Amendment; and, 3) violates due process.

The background of this case is set forth in our Order and Reasons filed August 30, 1991. We adopt and incorporate by reference herein all factual findings set forth in that opinion.

*Vagueness*

Defendants contend that the WARN Act is so vague as to be unconstitutional.

■ An enactment is void for vagueness if its *prohibitions* are not clearly defined. *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). The Supreme Court has stated that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Smith v. Goguen,* 415 U.S. 566, 572 n. 8, 94 S.Ct. 1242, 1247 n. 8, 39 L.Ed.2d 605 (1974) (quoting *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). However, the court also noted that "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972).

In order to prevail in a challenge that a statute is unconstitutionally vague on its face, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). The Court further stated in *Village of Hoffman Estates* that "[t]he Court has also expressed greater tolerance of enactments with civil rather

than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.,* 455 U.S. at 498–99, 102 S.Ct. at 1193.

Defendants contend that WARN is unconstitutionally vague because a person of ordinary intelligence cannot decipher the Act sufficiently to determine what conduct is prohibited and what is not. Defendants contend that the two exceptions set forth in § 2102(b)(1) and (2)(A) of the Act are vague. The first exception, the "faltering business" exception, provides for reduced notice under the following circumstances:

> An employer may order the shutdown of a single site of employment before the conclusion of the 60–day period if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business.

29 U.S.C. § 2102(b)(1). Defendants note that the Act does not define the term "actively seeking capital or business." Although the regulations give examples, they contend these examples are not exclusive and, therefore, the issue is left open to interpretation. Additionally, defendants contend that this exception is vague because its applicability turns on the employer's "reasonableness" and "good faith" and, thus, any employer relying on the exception opens itself up to litigation in which its reasonableness and good faith will be second-guessed.

The second exception, the "business circumstances" exception, which defendants also claim is unconstitutionally vague, provides:

> An employer may order a plant closing or mass layoff before the conclusion of the 60–day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.

29 U.S.C. § 2102(b)(2)(A). Defendants argue that the term "business circumstance" is left open to interpretation, with only loose guidance from the regulations.

Finally, defendants contend that the compensation provisions of the Act are unconstitutionally vague. The provision in question provides that an employer who violates the Act will be liable to each aggrieved employee for "backpay for each day of violation." 29 U.S.C. § 2104(a)(1)(A). Defendants contend that this provision is unconstitutionally vague because it is not clear whether "each day of violation" means calendar days or work days.

Defendants additionally contend that, due to the vagueness of the statute, it would be almost impossible for an employer to avoid the civil penalties contained in Section 2104(a)(3) of the Act. This section provides that "[a]ny employer who violates [the notice provisions] with respect to a unit of local government shall be subject to a civil penalty of not more than $500.00 for each day of such violation...." 29 U.S.C. § 2104(a)(3).

*Village of Hoffman Estates* instructs us to apply the following standards in evaluating a claim for vagueness:

> "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on *an ad* hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications" (footnotes omitted).

> These standards should not, of course, be mechanically applied. The degree of vagueness that the Constitution tolerates—as well as the relative importance

of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

*Village of Hoffman Estates,* 455 U.S. at 498–99, 102 S.Ct. at 1193 (quoting *Grayned,* 408 U.S. at 108–09, 92 S.Ct. at 2298–99). Furthermore, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.,* 455 U.S. at 495, n. 7, 102 S.Ct. at 1191, n. 7 (quoting *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974)). The challenge for vagueness is limited to how the provisions of the statute apply to the challengers, and not to others in different situations. *United States v. Wicker,* 933 F.2d 284, 288 (5th Cir.1991).

■ Defendants are without standing to challenge the exceptions to the notice requirements of WARN since those exceptions are not applicable to their conduct. We made the determination that defendants' conduct did not fit under any of the

exceptions in our previous decision. Those findings are incorporated herein by reference and we need not restate them.[1] The provisions of the Act which were applicable to defendants' conduct involved the requirement that they "not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order...." 29 U.S.C. § 2102(a). Defendants do not claim any ambiguity in this provision of the Act, nor would they be on solid ground if they attempted to do so.

■ Finally, defendants argue that the liability provisions of WARN are unclear because the requirement under § 2104 that damages are due "for each day of violation" could be interpreted to mean either that back pay and benefits are computed for each day of the violation or that the only back pay and benefits due would be what the employee would have earned during the period of the violation. We addressed the interpretation of this provision of WARN in our previous opinion. There is nothing in the Act, the regulations, or the legislative history to support defendants' alternative interpretations. The Act is clear that damages are due "for each day of violation." Nothing could be clearer.

Defendants' void for vagueness attack on the statute is meritless.

*Taking Clause of the Fifth Amendment*

■ The Fifth Amendment prohibits a "taking" by the government without just compensation. Defendants contend that the requirement that employers either give 60 days notice or make certain payments to terminated employees constitutes a "taking."

In *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct.

---

1. Even if the Act's exceptions were an issue to be decided, we would have no difficulty in finding that those provisions met constitutional muster. The Act, together with the implementing regulations, sufficiently apprise an employer of the nature of conduct which would bring him under one or more of the Act's exceptions. Additionally, even if an employer violates the Act, the Court may reduce or eliminate the amount of any liability or penalty if the employer can establish that there were reasonable grounds for

his belief that his actions did not constitute a violation of the Act. Because WARN is directed to economic regulation, its provisions are subject to a less strict vagueness test. Defendants' reference to the Act as one "penal" in nature, thus requiring the application of a stricter test, is erroneous. The Act provides for a civil penalty, not a criminal one, payable to an aggrieved unit of local government in an amount, in the discretion of the Court, of up to $500.00 for each day of violation.

2646, 57 L.Ed.2d 631 (1978), the Supreme Court attempted to set forth some guidelines for determining the existence of a "taking." That case involved a challenge to New York City's Landmarks Preservation Law. The Law placed developmental restrictions on property designated as a "landmark" and required owners of such property to maintain the exterior of the landmarks in good repair and to seek approval from a commission prior to altering the exterior features of the landmark. Under New York zoning law, however, any owners who had not developed their property to the full extent permitted by applicable zoning laws were allowed to transfer their unused developmental rights to other contiguous parcels in the same block. Additional rights were given to owners of property designated as a landmark. Penn Central owned the Grand Central Terminal and attempted, but failed, to get approval for construction of a 55 story office building over the terminal. Penn Central challenged the constitutionality of the Act, alleging it was a taking without compensation under the Fifth Amendment.

The Court concluded that the Law was constitutional. The Court noted that the prohibition against a taking without compensation was designed to bar government from forcing a few people to bear public burdens which should be borne by the public as a whole. *Id.*, 438 U.S. at 123, 98 S.Ct. at 2659. The Court pointed out that there was no set formula for making this determination, but stated that relevant factors included: 1) the economic impact of the regulation on the claimant; 2) the extent to which the regulation has interfered with distinct investment-backed expectations; and, 3) the character of the governmental action. With regard to the third factor, the Court noted that a taking is more readily found when the interference is a physical invasion than when the interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good. *Id.*, 438 U.S. at 124, 98 S.Ct. at 2659. In upholding the New York statute, the Court found that it was substantially related to the promotion of the general welfare and pointed out that

the law not only permitted a reasonable beneficial use of the landmark site, but also offered opportunities to further enhance other properties. *Id.*, 438 U.S. at 134–38, 98 S.Ct. at 2664–66. Because Penn Central owned other nearby properties, the developmental rights which it could not use to build over Grand Central Terminal could be transferred to other properties. *Id.*, 438 U.S. at 137–38, 98 S.Ct. at 2665–66.

The three factors set out in *Penn Central* were again applied by the Court in *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). In that case, a statutory scheme enacted pursuant to the Employee Retirement Income Security Act (ERISA) and the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA) was challenged as an unconstitutional taking. ERISA created the Pension Benefit Guaranty Corporation (PBGC), a government corporation. The PBGC assured that pension plan participants received promised retirement benefits by collecting insurance premiums from covered private retirement plans and then providing benefits to participants if their plan terminated leaving insufficient assets to pay its obligations. Multiemployer plans threatened the viability of the PBGC because many such plans were experiencing financial hardship and because the PBGC guarantees could have provided inducement for those plans to terminate. Therefore, the MPPAA provisions were enacted, providing that if an employer withdrew from a multiemployer pension plan, it had to pay its proportionate share of the plan's unfunded vested benefits. This regulation was challenged on the ground that the imposition of noncontractual withdrawal liability violated the taking clause by requiring employers to transfer their assets for the private use of pension trusts and required an uncompensated transfer of assets.

The Supreme Court upheld the Act. The Court first rejected an argument that such statutory liability to a private party always constituted an uncompensated taking. The Court noted that "Congress may set minimum wages, control prices, or create

causes of action that did not previously exist. Given the propriety of the governmental power to regulate, it cannot be said that the Taking Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another." *Id.*, 475 U.S. at 223, 106 S.Ct. at 1025. The Court then analyzed the Act under the factors set forth in *Penn Central.* First, with regard to the nature or character of the interference, the Court stated that the interference with the property rights of an employer arising from a public program that adjusts the benefits and burdens of economic life to promote the common good does not constitute a taking requiring compensation. *Id.*, 475 U.S. at 225, 106 S.Ct. at 1026. Second, the Court reviewed the severity of the impact and found that the withdrawal liability provision completely deprived an employer of the amount of money the employer was obligated to pay to fulfill its statutory liability. However, the Court found that this deprivation was mitigated by the fact that the assessed liability depended on the relationship between the employer and the plan to which it made contributions. *Id.*, 475 U.S. at 225, 106 S.Ct. at 1026. The Court also noted that various provisions of the MPPAA mitigated the economic impact of an individual employer's liability by providing that certain transactions were exempt from the definition of "withdrawals." *Id.*, 475 U.S. at 225–26, 106 S.Ct. at 1026–27. Third, the Court found that the MPPAA did not interfere with reasonable investment-backed expectations. The Court pointed out that pension plans historically have been subject to regulation and that the objective of the regulation was to ensure that employees received what was already promised to them. The Court noted that when the MPPAA was passed, employers were put on notice that not only were pension plans regulated, but that withdrawal might trigger additional financial obligations. *Id.*, 475 U.S. at 226–27, 106 S.Ct. at 1026–27.

The factors set forth in *Penn Central* and *Connolly*, applied to the facts of this case, favor a finding that the WARN Act requirements do not constitute a taking without compensation. First, with regard to the character of the government invasion, the invasion here is not an actual "physical invasion"; rather, the Act is one which "adjusts the benefits and burdens of economic life to promote the common good."

The second factor is the severity of the economic impact. Defendants contend that they will be liable for nearly three million dollars if all of the possibly affected employees are found to be entitled to 60 days pay. Defendants contend that this burden is especially harsh because notice could not have been given any sooner. However, defendants have overestimated their potential liability. They compute their figures based on the assumption that every affected employer will be entitled to 60 days pay. All employees in question did receive some notice. As an example, the employees who were terminated on May 9, 1989 received notice on April 19 (20 days notice); therefore, assuming liability, those employees would be entitled at most to 40 days compensation (the period of the violation). Also, defendants indicate, in their response to the Court's invitation that they supplement their supporting affidavits to set forth the actual cost of retaining all affected employees on the payroll for 60 days, that two million of their three million dollar estimated cost would be attributable to severance pay, which they would be obligated to pay notwithstanding the applicability of WARN. Only an accurate assessment of the income, costs, and expenses in keeping the Canal Street store, headquarters, and warehouses open for the required 60 days after notice [2] would reflect whether defendants would have realized a profit or suffered a loss in the continued operations. The existence of exceptions in the Act allowing for shortened notice under certain circumstances could mitigate the economic impact in some situations and would be an additional factor to consider in an analysis

---

**2.** Holmes' Canal Street store did in fact remain in operation for more than 60 days after the merger. Defendants have failed to furnish proof that their compliance with the Act would have resulted in any significant economic impact.

of whether the provisions of WARN constitute a prohibited taking. However, since these exceptions are not available to defendants, we do not consider them in our analysis.

The final factor we must consider is the Act's interference with reasonable investment-backed expectations. There was no interference with defendants' investment-backed expectations. The Act was passed on August 4, 1988 to become effective February 4, 1989. Holmes and Dillard did not begin negotiations to merge until the latter part of 1988. The negotiations were finalized on March 6, 1989. In the bargaining process, both defendants could have anticipated WARN's impact on their respective situations and could have provided for that impact, if they so chose to do so, in the merger agreement.

WARN's provisions do not constitute an impermissible taking under the Fifth Amendment.

## DUE PROCESS

■ Defendants' final contention is that the provisions of WARN violate the Due Process Clause of the Fifth Amendment. They argue that the imposition of liability in the present case would be arbitrary and harsh; that the Act's provisions prevent them from reasonably ascertaining whether their course of conduct constitutes a violation of WARN; and, that the Act cannot accommodate situations, as in this case, where provisions of WARN come into conflict with the requirements of the Securities Exchange Commission Act and Louisiana corporation law.

This last contention is totally frivolous. There exists no conflict among the provisions of the aforementioned laws nor in their respective applications.

Defendants' second contention similarly can be disposed of quickly. Their argument that they "could not reasonably ascertain whether their conduct violated

the Warn Act" is more properly a vagueness issue than a due process one. We considered this contention in connection with defendants' vagueness argument and found it lacking in merit.

■ Defendants' final due process concern is that the imposition of liability upon them "in the present case" is arbitrary and harsh. In support of their argument, they refer to the concurring opinion of Justice O'Connor in *Connolly*, 475 U.S. at 228, 106 S.Ct. at 1028, which explained that "the court does not decide today, and has left open in previous cases, whether the imposition of withdrawal liability under the MPPAA and of plan termination liability under the Employee Retirement Income Security Act of 1974 (ERISA) may in some circumstances be so arbitrary and irrational as to violate the Due Process Clause of the Fifth Amendment."

*Connolly*, however, involved the retroactive imposition of liability on employers for the benefit of employees. Retroactive imposition of benefits is not implicated in the matter before this Court. As Justice O'Connor recognized in her opinion in *Connolly*, "[i]nsofar as the application of the provisions of the MPPAA and of ERISA to pension benefits that accrue in the future is concerned, there can be little doubt of Congress' power to override contractual provisions limiting employer liability for unfunded benefits promised to employees under the plan." *Id.*, 475 U.S. at 229, 106 S.Ct. at 1028.

"[L]egislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and ... the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976).[3]

---

**3.** In *Usery*, the Supreme Court sustained a statute requiring coal mine operators to compensate former employees disabled by black lung disease even though the operators had not contracted for such liability and the employees involved had long since terminated their connection with the industry. The Court noted that the

Act had some retrospective effect in that it did require some compensation for disabilities bred during employment and arising before the date of enactment of the statute, and further noted that the liability may not have been anticipated at the time of employment. However, the Court found that the legislation readjusting rights and

 

*Accord Connolly,* 475 U.S. at 228–29, 106 S.Ct. at 1027–28 (concurring opinion quoting *Usery*). Defendants have failed to rebut the strong presumption of WARN's constitutionality.

WARN evinces a Congressional concern for the economic hardships visited upon workers, their families, and the communities in which they reside when the workers' employers cease business operations, either voluntarily or involuntarily. The advance notice requirements of the Act are designed to lessen the impact that plant closings engender, offering workers an opportunity not only to seek alternative employment but also time to obtain retraining, if required, to allow them to compete successfully in the job market. The provisions of WARN are rationally related to Congress' concern. This Court holds that the legislature has not acted arbitrarily in fashioning the Act's requirements.

Accordingly, for reasons set forth in this opinion, defendants' Motion for Summary Judgment is DENIED.

burdens was not unlawful solely because it upset otherwise settled expectations, even where the effect of the legislation was to impose a new duty or liability based on past acts.