# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2670

_____

| | | |
|---|---|---|
| Clear Channel Outdoor, Inc., a Delaware corporation, | * | |
| | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| The City of St. Paul, | * | |
| | * | |
| Appellant. | * | |
| | * | |
| _____ | * | |
| | * | |
| Minnesota Chamber of Commerce; | * | |
| Builders Association of Minnesota; | * | |
| Minnesota Automobile Dealers | * | |
| Association; NAIOP Minnesota; | * | |
| Outdoor Advertising Association of | * | |
| Minnesota, | * | |
| | * | |
| Amici on Behalf of Appellee. | * | |

_____

Submitted: May 12, 2010
Filed: August 25, 2010

_____

Before WOLLMAN, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Clear Channel Outdoor, Inc., sued the City of St. Paul, Minnesota, after the St. Paul City Council ("City Council") enacted an ordinance prohibiting all billboard extensions. After settlement negotiations failed, the district court[1] granted Clear Channel's motion for partial summary judgment. The court held the ordinance unenforceable as a matter of Minnesota law, because the City Council failed to articulate any rational basis for its action. The City appeals, and we affirm.

I.

Clear Channel is engaged in the business of outdoor advertising. According to the complaint, it has operated in St. Paul since approximately 1925, and owns and maintains 390 billboards, with 460 sign faces, within the city limits. For many years, Clear Channel regularly used temporary billboard extensions to give its customers greater creative freedom and to enhance the visual impact of messages displayed on its billboards. A billboard extension is a part of a graphic or word that protrudes beyond the normal rectangular outline of a billboard.

Until November 2000, billboards in St. Paul were subject to regulation but were permitted under the City's zoning code. At that time, the City Council adopted a prohibition on new billboards, St. Paul, Minn. Code ("Code") § 66.214 (current version at § 64.420), but it deemed existing signs to be legal nonconforming uses. *Id.* § 66.301 (current version at § 64.301). The size of billboard extensions and the length of time for which they were permitted were regulated under Code § 64.301(g). Clear Channel continued to use temporary billboard extensions when consistent with a customer's advertising campaign.

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

In March 2005, noting increasing complaints concerning billboard extensions that remained in place longer than permitted, the Zoning Committee of the city's Planning Commission began to discuss a proposal that the city charge a permit fee for each billboard extension. At a public meeting of the Zoning Committee, a representative of a local group called "Scenic St. Paul" suggested that rather than charge a permit fee, the city ought to prohibit billboard extensions altogether. This suggestion by a member of the public on March 3, 2005, is the first reference in the record to an outright ban on extensions. A follow-up memorandum written by a city employee noted the suggestion and commented that "[i]f there is a desire to prohibit billboard extensions, it is suggest[ed] that a separate study be initiated to examine the idea of an amendment to the sign ordinance." Later that month, the Planning Commission passed a resolution supporting the proposed permit requirement for billboard extensions.

At a public hearing on August 3, 2005, the City Council discussed the proposed permit fee for extensions, which was contained in proposed Ordinance 05-632. Councilmember Benanav queried "whether billboard extensions could be prohibited." An assistant city attorney present at the hearing stated that another assistant city attorney was best suited to answer the question. The minutes of the hearing indicate that three city residents testified in favor of the three ordinances under discussion (including Ordinance 05-632), and that no one appeared in opposition. Ordinance 05-632 was laid over to the next meeting on August 10, and then laid over again until November 2 to allow time for the Planning Commission to conduct further review.

At the City Council's request, the Planning Commission again took up the matter of billboard extensions. The proposed Code amendments sent to the Planning Commission for study included both a ban on billboard extensions and an enactment of a $48 permit fee. At a meeting on September 29, 2005, the Commission's Zoning Committee rejected the proposed prohibition of billboard extensions by a vote of four to three. The committee then passed a motion to permit billboard extensions, subject

to a fee, in accordance with the committee's recommendation from the previous spring. The Planning Commission's final recommendation to the City Council reads: "Billboard extensions should continue to be permitted with the addition of a permit and fee as originally recommended by the Planning Commission."

Shortly after receiving the Planning Commission's recommendation, the City Council placed Ordinance 05-632 back on its agenda. At its meeting on November 2, 2005, the Council president suggested that a public hearing should be scheduled regarding the proposed ordinance. The matter was laid over without further discussion. The Council postponed consideration of the ordinance several more times in the ensuing months.

Then, in February 2006, the City Council substituted a new ordinance for Ordinance 05-632. The minutes of the Council meeting on February 15, 2006, contain the following item:

> First reading – 06-160 – An ordinance amending § 64.301(a) of the Saint Paul Legislative Code pertaining to the regulation of nonconforming signs by prohibiting "billboard" extensions to nonconforming signs and old regulations pertaining to such extensions under Legislative Code 301(g). Laid over to February 22 for second reading.

Ordinance 06-160 was read again at subsequent Council meetings on February 22 and March 1. At the March 1 meeting, several attendees spoke about the ordinance. An assistant city attorney explained that if the ordinance were to pass, a grandfather provision would allow existing billboards to remain in place as nonconforming uses. A city zoning administrator reminded the Council that the Zoning Committee had rejected a proposal to eliminate billboard extensions altogether, and voted instead to support the permit fee proposal. Clear Channel's attorney appeared and argued against the ordinance. One St. Paul resident, as well as a representative of Scenic St.

-4-

Paul and the Downtown Building Owners' Association, appeared in support of the ordinance.

At the City Council meeting on March 8, 2006, Ordinance 06-160 was proposed for final adoption. The minutes reveal only brief discussion of the ordinance, none of which concerned its merits or drawbacks:

> Councilmember Helgen requested that staff look at the concentration of billboards and the impact they will have in the future. Councilmember Benanav stated there is research material available in the Ward 4 office which he would be happy to share. Councilmember Harris said he wants to see good policy directive set for this issue that will uphold legally if it is challenged. He requested that the City Attorney keep the Council informed on developments on this issue.

The Council then voted unanimously to adopt the ordinance, thereby enacting a ban on billboard extensions.

Ordinance 06-160 was codified as Code § 64.301(a), which reads: "No sign shall be enlarged or altered in a way which increases its nonconformity. Billboard extensions are not permitted." Code § 64.301(g), which had regulated temporary extensions, was deleted. The amendments went into effect on May 3, 2006. In June, the City demanded that Clear Channel remove its existing billboard extensions by August 1 and refrain from using new ones.

Clear Channel then filed a two-count complaint against the City, alleging that the enactment represented an unconstitutional and unreasonable use of police power, and that the ordinance violated Clear Channel's constitutional rights to due process and equal protection of the laws. St. Paul moved for summary judgment on both counts, and Clear Channel moved for partial summary judgment on the first count, suggesting several grounds on which the court could find that § 64.301(a) was an

invalid and illegal exercise of police powers. The district court heard argument on the parties' motions in October 2007 and then directed them to participate in a mediation process.

In January 2009, the parties informed the court that they had reached an impasse. The court ordered supplemental briefing and held a second hearing in May 2009. In an order issued the following month, the district court granted Clear Channel's partial motion for summary judgment and denied the City's motion for summary judgment. The court concluded that the City Council's enactment of the ordinance was arbitrary and capricious, and ruled that "Code § 64.301(a) is unenforceable as a matter of law because the record is void of any articulated reasons by the City for its enactment of the ordinance." The court did not reach Clear Channel's other proposed grounds for invalidating the ordinance, and it did not address Clear Channel's constitutional claims under the second count of the complaint.

The City appealed. Because the district court had not expressly resolved the second count brought by Clear Channel, we remanded the case for the limited purpose of allowing the district court to consider whether to enter an order pursuant to Federal Rule of Civil Procedure 54(b) on a *nunc pro tunc* basis. *See In re Flight Transp. Corp. Sec.*, 825 F.2d 1249, 1250 (8th Cir. 1987); *Hayden v. McDonald*, 719 F.2d 266, 268 (8th Cir. 1983) (per curiam); *see also State Contracting & Eng'g Corp. v. Florida*, 258 F.3d 1329, 1334 (Fed. Cir. 2001); *United States v. Spence*, Nos. 99-2325, 99-2345, 2000 WL 1715216, at *1 n.1 (10th Cir. Nov. 15, 2000). On August 4, 2010, the district court entered such an order, finding that its grant of Clear Channel's motion for partial summary judgment on June 15, 2009, was a final order, and that there was no just reason for delay. Satisfied of our jurisdiction, we proceed to review the district court's grant of summary judgment *de novo*.

II.

The primary dispute on appeal concerns whether the district court used the correct legal standard in its analysis of Code § 64.301(a). This is a question of Minnesota law, and we must predict how the Minnesota courts would treat the matter. *See In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004)

The district court used the analytical framework adopted by the Supreme Court of Minnesota in *Honn v. City of Coon Rapids*, 313 N.W.2d 409 (Minn. 1981). Faced with a challenge to a city council's rejection of a request to rezone certain land, the *Honn* court described the "proper procedure for review" in a zoning matter. *Id*. at 416. The court explained that "the issue is whether there was a rational basis for the municipal body's legislative decision," and that the evidence presented to the city council is relevant. *Id.* The procedure also allowed for "[n]ew or additional evidence" to be received at trial, as long as it was relevant to the issues raised and considered before the municipal body. *Id.* Most important for present purposes, *Honn* declared that "[t]he municipal body need not necessarily prepare formal findings of fact, but *it must, at a minimum, have the reasons for its decision recorded or reduced to writing and in more than just a conclusory fashion*." *Id.* (emphasis added). This procedure, said the court, "should be followed in . . . any zoning matter, whether legislative or quasi-judicial." *Id.*

The City argues that the district court erred in applying the *Honn* procedure to the City Council's enactment of § 64.301(a). Citing *Arcadia Dev. Corp. v. City of Bloomington*, 552 N.W.2d 281 (Minn. Ct. App. 1996), the City urges that we should apply instead the rule that "[l]egislative bodies generally are not required to articulate reasons for enacting a statute or ordinance," and that "[t]he rational basis test merely requires the challenged legislation to be supported by any set of facts either known or which could reasonably be assumed." *Id*. at 289. The City argues that it can identify

-7-

several ways in which the prohibition of billboard extensions promotes the health, safety, and general welfare of the citizens of St. Paul, even though these reasons may not have been articulated in proceedings of the City Council, and that the district court should have upheld the ordinance on those bases.

Clear Channel argues that the City has shifted positions on appeal, now urging that the district court erred by applying a standard that the City itself endorsed in the district court. We think a fair reading of the record bears out this contention. The *Arcadia* decision, featured prominently in the City's briefs on appeal, was never even cited to the district court. To the contrary, the City agreed at the first hearing on cross-motions for summary judgment that *Honn* set forth the governing legal standard, saying that "the *Honn* case is controlling," and that it was "still valid and controlling law on this issue and still cited, obviously, up to the present." (Hr'g. Tr. I at 31).

We also think the district court's application of *Honn* most likely reflects how the Minnesota courts would examine this case. The *Arcadia* decision did not involve a zoning matter, but rather a city ordinance that required mobile home park owners to pay reasonable relocation costs to displaced park residents after the closing of a park. 552 N.W.2d at 283. The Minnesota Court of Appeals distinguished *Honn* on the ground that *Arcadia* did not involve a challenge to a zoning decision, but rather to the adoption and enforcement of an ordinance. *Id.* at 288-89.

The City responds that Ordinance 06-160 banning billboard extensions was in fact "an ordinance of city wide application," rather than a zoning decision of the sort governed by *Honn*. It characterizes *Honn* as applicable only to zoning decisions concerning specific parcels of land or pieces of property. Minnesota case law does not specifically address this point, but we think the available precedent indicates that the Supreme Court of Minnesota would apply *Honn* to the billboard ordinance.

*Honn* stated broadly that the procedure it announced should be followed in "*any* zoning matter, whether *legislative or* quasi-judicial." 313 N.W.2d at 416 (emphases added). It therefore applies with respect to rezoning, as well as to variances and special use permits. *Id*. The court derived the applicable standard of review for municipal actions from Minn. Stat. § 462.357, subd. 1, which authorizes a municipality to regulate the location, height, and width of buildings and other structures, "[f]or the purpose of promoting the public health, safety, morals, and general welfare." The City's authority to regulate billboard extensions in St. Paul, like the municipal authority at issue in *Honn*, derives from § 462.357, subd. 1. We think *Honn* is best read to mean that the procedure set forth in that decision applies to municipal actions based on authority granted by the zoning statute, § 462.357, subd. 1, whether the actions apply to a specific building or parcel of land or to structures generally. The ordinance at issue in *Arcadia*, by contrast, was adopted pursuant to a separate legislative grant of authority in Minn. Stat. § 327C.095, subds. 1-5, *see* 552 N.W.2d at 284, and *Honn* was inapplicable.

III.

The City argues alternatively that even if the district court was correct to apply the *Honn* procedure, the court erred by failing to hold a trial. The City contends that it was entitled to present evidence to prove that it had a rational basis for the billboard extension ordinance. Again, the City appears to have changed course on appeal. After offering in written briefs "to supply more than an adequate record, factual and legal," on the issue of whether the ban on billboard extensions could be supported by the City's interest in "aesthetics and/or safety goals," the City assured the district court at a hearing that the record was complete, and the motions ripe for decision:

> THE COURT: Is there anything else that I need, whether it is on behalf of the city, or as you see this case with Clear Channel, or I do really have what I need to make the call? *Is there any lingering issues of fact out there where you are saying, well, look, unless you are going to come our*

*way on this, we should have a right to a hearing on this issue or that issue – or do I have what I need?*

[Counsel for the City]: *I believe so, Your Honor. We have submitted the record, and that is why it is summary judgment.*

(App. 320) (emphasis added).

Aside from whether the City waived any claim that a trial was necessary, we believe that the district court correctly applied Minnesota law in resolving the case on the record that was before it. Although *Honn* did provide that the parties to a declaratory judgment action are "entitled to a trial," and that "[n]ew or additional evidence may be received at the trial," 313 N.W.2d at 416, the Supreme Court of Minnesota since has clarified that *Honn* does not require "a trial or augmentation of the record in every case." *Swanson v. City of Bloomington*, 421 N.W.2d 307, 312 (Minn. 1988). "Where the municipal proceeding was fair and the record clear and complete, review should be on the record." *Id.* at 313. Here, the district court received a lengthy record composed of meeting minutes and staff memoranda from both the Planning Commission (including its Zoning Committee) and the City Council, as well as a detailed timeline associated with the adoption of Code § 64.301. The City's difficulty in this case is not that the record of what happened in the City Council proceedings is unclear or incomplete, but that the Council simply failed to articulate any rational basis for its action.

In other cases, the Supreme Court of Minnesota has remanded zoning appeals to a municipal body for an opportunity to develop a record that would allow meaningful appellate review. *E.g.*, *Earthburners, Inc. v. County of Carlton*, 513 N.W.2d 460, 463 (Minn. 1994); *White Bear Rod & Gun Club v. City of Hugo*, 388 N.W.2d 739, 742 (Minn. 1986). More recently, however, the Minnesota court has "emphasize[d]" that these decisions were "not intended to provide local government units with a routinized opportunity for a second bite at the apple by neglecting to

provide an adequate record for review." *Interstate Power Co. v. Nobles County Bd. of Comm'rs*, 617 N.W.2d 566, 577 n.6 (Minn. 2000). It should be a "rare case" when such a remand is necessary. *Id*. at 577.

This is not such a case. For one thing, the City assured the district court that the record was adequate for decision, and a reversal of that position on appeal does not justify a remand. *In re Livingood*, 594 N.W.2d 889, 895 (Minn. 1999). The remand procedure of *Earthburners* and *White Bear Rod & Gun Club* also arose in a different context. There is a "general principle" in Minnesota law that "when a governmental body denies a [special use] permit with such insufficient evidence that the decision is arbitrary and capricious, the court should order issuance of the permit." *Id.* The state supreme court fashioned an exception to that principle when the rationale for a decision of the municipality was not adequately recorded. Without such an exception, the law would compel the issuance of a special use permit by the municipality despite sound (but unarticulated) reasons to deny it. A refusal to remand in this situation, by contrast, simply retains the *status quo* and allows the City to begin its legislative process anew.

\*          \*          \*

We conclude that the district court correctly applied Minnesota law in holding that Code § 64.301(a) is unenforceable. The judgment of the district court is affirmed.

_____